IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| C.D., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 5:24-cv-246-CHW |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | Social Security Appeal |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This is a review pursuant to 42 U.S.C. § 405(g) of a final decision of the Commissioner of the Social Security Administration denying Plaintiff C.D.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals. As discussed below, it is not clear that the ALJ properly assessed the medical opinion of Dr. Bridgett Bailey under 20 C.F.R. § 416.920c. Therefore, Plaintiff's case must be **REMANDED** for a reevaluation of the evidence pursuant to sentence four of 42 U.S.C § 405(g).

I.   **Background**

Plaintiff/Claimant C.D. was born on January 4, 1977. (R. 74). Plaintiff applied for Title XVI and Title XIX disability benefits in July 2021, alleging disability arising as of January 31, 2021, due to spine issues and COVID-19 complications. (*Id.*). After Plaintiff's application was denied initially and on reconsideration at the state agency level of review (Exs. 1A–6B), Plaintiff requested further review before an Administrative Law Judge (ALJ). At a hearing before the ALJ in June 2023, Plaintiff explained that she had difficulty sitting, standing, and walking for prolonged periods and had to elevate her legs throughout the day. (R. 61–65),

In October 2023, the ALJ issued an opinion finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 7). In relevant part, the ALJ found that Plaintiff could perform light work, with exceptions, and she could perform her past work as a Hospital Food Service Worker. (R. 15–20). Plaintiff subsequently requested further review before the Appeals Council, but in May 2024, the Appeals Council declined Plaintiff's request for further administrative review. (R. 1). Plaintiff now seeks judicial review of the Commissioner's decision, arguing that the ALJ erred in determining Plaintiff's RFC, by not evaluating Plaintiff's obesity, and by improperly rejecting the medical opinions of two physicians.

II.     **Standard of Review**

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether the decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation and citation omitted). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* (citation omitted). Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Consequently, the Court's role in reviewing claims brought under the Social Security Act is quite narrow.

The Commissioner's findings of law are given less deference. Those, the Court will consider *de novo*. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022).

### III. Evaluation of Disability

Social Security claimants are "disabled" if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Under the Social Security regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The Commissioner determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

Winschel, 631 F.3d at 1178 (citations omitted).

### IV. Medical Record

#### A. Treatment Notes

Plaintiff has a history of obesity and varicose veins. (R. 392). In March 2020, Plaintiff visited her primary care provider with complaints of lower back pain. (R. 293). Plaintiff weighed 362 pounds and presented with varicose veins, lumbar tenderness, and an antalgic gait. (R. 293–95). Plaintiff underwent a weight assessment, was continued on cyanocobalamin, and was counseled on an appropriate diet and proper exercise. (R. 296). Plaintiff was treated virtually in May 2020 for continued back pain, was assessed with a BMI of 60–69.9 and hyperthyroidism, and

was counseled on COVID-19 prevention. (R. 305–06). Between May and October 2020, Plaintiff retuned several times, both in-person and via teleconference, for foot pain, sinus pressure, and prescription refills. (R. 306–23). Records from a June 2020 visit indicate that she had occasional back pain but that she stated she was "ready to get back to work." (R. 308). Plaintiff visited her podiatrist in July 2020 and was assessed with xerosis, a fungal toe infection, hammer toe of the right foot, and claudication of both lower extremities. (R. 320–21).

Treatment notes from October 2020 show Plaintiff visited with complaints regarding her weight and generalized chronic pain. (R. 326, 338). The notes indicate that Plaintiff was 386 pounds and was assessed with hypertension, chronic pain, morbid obesity, and varicose veins of bilateral lower extremities, among other conditions. (R. 328–29, 340). Plaintiff was advised to wear compression stockings and elevate her limbs as much as possible. (R. 340). Orthopedic notes from October 2020 indicate that Plaintiff had osteoarthritis of both knees. (R. 722–25). Plaintiff also tested positive for COVID-19 in December 2020. (R. 348). Plaintiff visited her primary care provider in January 2021 for a follow-up of a hospital visit relating to pulmonary emboli. (R. 392). Plaintiff exhibited normal strength, and her provider assessed her with COVID-19, morbid obesity, and hypertension. (R. 395). Treatment records from February 2021 indicate that Plaintiff presented with lower back pain. (R. 386). Plaintiff weighed 366 pounds with a BMI of 62.87 and was assessed with paralumbar tenderness. (R. 389). Notes from March to May 2021 are consistent with prior assessments of chronic pain, hypertension, and morbid obesity. (R. 361, 365). Specifically, Maay 2021 records reflect that Plaintiff rated her lower back and bilateral knee pain an eight out of ten. (R. 364). Plaintiff's provider advised Plaintiff to avoid heavy lifting, pushing, or pulling, and any climbing, bending, or squatting. (R. 365).

Pulmonology records from a May 2021 visit to the Augusta University Medical Center indicate that Plaintiff's recorded pulmonary emboli were caused by COVID-19. (R. 692). Those records also note that Plaintiff could ambulate for a quarter of a mile and could accomplish daily activities. (R. 687). Plaintiff returned to the Augusta University Medical Center in June 2021 with complaints of shortness of breath. (R. 662). Plaintiff weighed 388 pounds[1] and had normal ventricular size with mild to moderate reductional functioning on either side. (R. 667). Subsequent cardiology records reflect that Plaintiff's weight had increased to 402 pounds. (R. 664). Other June 2021 records reflect that Plaintiff reported right knee pain starting in the patella and radiating to the lateral side and down the leg. (R. 428). Findings reflect normal mineralization, joint space narrowing, early marginal osteophytosis, and obesity. (*Id.*). September 2021 records reflect that Plaintiff's weight had increased to 408 pounds, and she presented with complaints of lower extremity edema. (R. 645–46). A physical exam revealed a normal range of motion, normal strength, a steady gait, and no joint pain. (*Id.*). The following month, Plaintiff complained of shortness of breath when walking fifteen to twenty minutes. (R. 636).

Treatment records from November 2021 show complaints of lower back and right knee pain. (R. 630). Plaintiff explained that the pain was exacerbated during periods of prolonged sitting or standing and that rest partially relieved the symptoms. (R. 630). Cardiology notes from January 2022 reference a June 2021 echocardiogram which showed "LVEF of 40-45% without significant valvular heart disease and normal RV size and mildly reduced function." (R. 545). Plaintiff's provider noted that Plaintiff possibly had covid cardiomyopathy, "but morbid obesity precludes cardiac MRI." (R. 549). During this visit, Plaintiff exhibited decreased breath sounds and lower extremity edema and weighed 403 pounds. (R. 547).

---

[1] In what the Court can only conclude was a simple scrivener's error, Plaintiff listed her weight as 180 pounds in her July 2021 disability report. (R. 213): *see* (R. 16, 74).

During a March 2022 visit to her podiatrist, Plaintiff presented with pain in her left foot and had normal lower extremity muscle strength. (R. 453–54). Records from a subsequent visit in May 2022 note similar findings with an additional assessment of venous insufficiency. (R. 447). Plaintiff returned to her primary care provider, Dr. Bridgett Bailey, the following month with complaints of joint pain in both knees and her lower back. (R. 439). Plaintiff complained further that prolonged sitting and standing, walking, bending, and heavy lifting aggravated her symptoms. (*Id.*). A review of Plaintiff's medication list indicates that she was on more than twenty daily medications at that time. (*Id.*). Plaintiff's provider assessed her with hypertension, obesity, primary osteoarthritis of the right knee, pain in her left knee, lumbar degenerative disc disease, a pulmonary embolus, and varicose veins of both legs with edema, among others. (R. 441). Plaintiff's complaints of bilateral knee pain and varicose veins were documented further during the latter half of 2022. (R. 499, 509–12, 722).

Following a referral from Dr. Bailey, Plaintiff visited the Augusta Vascular Center in December 2022. (Ex. 8F). The rendering physician diagnosed Plaintiff with morbid obesity, pain in her limbs, varicose veins of bilateral lower extremities with pian, and hypertension. (R. 700). Plaintiff was advised to utilize medical grade compression at that time because she was "too large to undergo [a] venous reflux study." (R. 702).

Plaintiff returned to Dr. Bailey in February 2023 where she was assessed with a normal gait, normal motor strength, trace ankle edema, full range of motion, and morbid obesity. (R. 521–22). Orthopedic treatment records from June 2023 reflect that Plaintiff ambulated with assistance from a cane. (R. 718). At that time, Plaintiff's weight had increased to 433 pounds, and her provider recommended that Plaintiff lose weight before attempting surgery. (R. 715, 718).

B. <u>Physician Opinions</u>

In May 2024, Plaintiff's primary care provider, Dr. Bridgette Bailey, authored a letter in which she stated that she advised Plaintiff not to work in January 2021 due to complications of COVID-19, pulmonary emboli, shortness of breath, and acute congestive heart failure. (R. 706). Dr. Bailey wrote further that she also advised Plaintiff to avoid work due to low back and knee pain, intermittent lower extremity swelling secondary to varicose veins, and hypertension. (*Id.*). She further advised Plaintiff to avoid heavy lifting, pushing, pulling, repetitive bending and squatting, climbing, and exposure to highly scented cleaning supplies. (*Id.*). Dr. Bailey stated that Plaintiff was a fall risk for any job. (*Id.*). Ultimately, Dr. Bailey opined that Plaintiff was disabled and required disability services. (*Id.*).

In October 2021, the reviewing state agency physician, Dr. Gary Smith, released his disability determination explanation. (Ex. 2A). Dr. Smith opined that Plaintiff had postural limitations; specifically, Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. (R. 76). Dr. Smith explained that Plaintiff's limitations were due to her morbid obesity. (R. 77).

In November 2022, another reviewing state agency Physician, Dr. Muoneke, released a disability determination explanation. (Ex. 4A). Dr. Muoneke opined that Plaintiff's postural limitations were as follows: Plaintiff could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and frequently stoop, kneel, crouch, and crawl. (R. 84). Dr. Muoneke explained that Plaintiff's limitations were also due to her morbid obesity. (*Id.*).

V. **Disability Evaluation in This Case**

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 31, 2021, her alleged onset date. (R. 13). Next, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative lumbar disc disease; osteoarthritis of her knees and degenerative joint disease of her right knee; cardiomyopathy; obstructive sleep apnea; and obesity." (R. 13).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform light work with the following limitations: "[s]he should never climb ladders, ropes or scaffolds, but she can occasionally climb ramps and stairs; [s]he can frequently stoop, kneel, crouch, and crawl and can constantly balance; [s]he can have occasional exposure to workplace hazards; and [s]he can have frequent exposure to extreme heat and humidity, and pulmonary irritants." (R. 15). Based on this RFC, the ALJ determined at step four that Plaintiff was able to perform her past relevant work as a Hospital Food Service Worker. (R. 20). At step five, the ALJ found that Plaintiff could also adjust to the requirements of other jobs including Merchandise Maker, Cashier II, and Cafeteria Attendant. (R. 21). Accordingly, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act.

## VI. Analysis

Plaintiff argues that (1) the ALJ's analysis of Plaintiff's RFC is not supported by substantial evidence, (2) the ALJ erred by failing to evaluate Plaintiff's obesity, and (3) the ALJ improperly assessed the medical opinion evidence.

Taking Plaintiff's arguments out of turn, Plaintiff argues that the ALJ erred in failing to evaluate the supportability and consistency of Plaintiff's primary care provider, Dr. Bridgett Bailey. In May 2023, Dr. Bailey, wrote that

8

> I have advised [Plaintiff] to avoid work due to chronic illnesses: low back and knee pain due to arthritis, and intermittent leg/ankle/foot swelling secondary to varicose veins, hypertension and history of congestive heart failure. Due to her pain and sometimes swelling, [Plaintiff] has to change her position which can include lying down and elevating her legs/ I have advised [Plaintiff] to avoid heavy lifting, pushing, pulling, repetitive bending/squatting, climbing, [and] exposure to highly scented cleaning supplies/sprays. [Plaintiff] also has sleep apnea requiring CPAP, morbid obesity, allergies, bilateral mild to moderate knee degenerative disease, lumbosacral degenerative disc disease, disc bulge L4-L5 and L5–S1, and stenosis at L3–L4 and L4–L5. [Plaintiff] is a fall risk for any job.

(R. 706) (cleaned up). Dr. Bailey opined ultimately that Plaintiff was "disabled." (*Id.*).

For applications filed on or after March 27, 2017, there is no requirement to give special deference to the opinions of treating physicians. *See* 20 C.F.R. § 416.920c. Plaintiff filed her application for benefits in July 2021. (R. 74). The weight given to all medical opinion evidence—even those opinions from Plaintiff's own treating physicians—is now governed by 20 C.F.R. § 416.920c. Under these regulations, the agency no longer defers or gives any specific evidentiary weight to any medical opinion, even those from a claimant's own medical sources. 20 C.F.R. § 416.920c(a). The Eleventh Circuit has stated clearly that the "new regulatory scheme no longer requires the ALJ to assign more weight to medical opinions from a claimant's treating source or to explain why good cause exists to disregard the treating source's opinion." *Matos v. Comm'r Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. 2022).

The decision instead must articulate how persuasive the medical opinions and prior administrative findings were found to be. 20 C.F.R. § 416.920c(b). The decision is not required to articulate the determination for each and every record, however, and instead may discuss the source of the opinion in a single analysis. 20 C.F.R. § 416.920c(b)(1). The following factors will be used to consider and weigh the record: supportability, consistency, relationship with the claimant, and

specialization. 20 C.F.R. § 416.920c(c)(1)–(4). The most important factors are supportability and consistency, and the decision must state how these factors were considered in the disability determination. 20 C.F.R § 416.920c(b)(2). After reviewing the decision, it is not clear that the ALJ applied the applicable legal standard to Dr. Bailey's opinion.

In this case, the ALJ adequately summarized Dr. Bailey's opinion. (R. 19). However, the Court is unable to conclude whether the ALJ considered the supportability and consistency of that opinion. The ALJ notes that Dr. Bailey's opinion regarding whether Plaintiff is legally disabled "is unpersuasive given the other evidence of record, including her own clinical findings, do not indicate [Plaintiff] is so limited or disabled." (R. 20). While the ALJ is not required to use "magic words," the ALJ must "articulat[e] his consideration of the supportability and consistency factors . . . ." *Stephenson v. Comm'r of Soc. Sec.*, No. 6:21-CV-1536-DCI, 2023 WL 2305967, at *2 (M.D. Fla. Mar. 1, 2023) (citation omitted); *see Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted). The ALJ notes Dr. Bailey's ultimate opinion and her previous advice to Plaintiff that she not work due to COVID-19 complications, but the decision is silent as to whether Dr. Bailey's medical opinion regarding Plaintiff's impairment-related limitations on her ability to perform physical demands is consistent or supported by the record.[2] *See* 20 C.F.R. § 404.1513(a)(2)(i). Although the ALJ ultimately found Dr. Bailey's May 2023 opinion unpersuasive, it is not clear that the ALJ considered the consistency and supportability of those limitations in connection to other medical evidence. This is not to say that the ALJ erred in its summary of the medical records or its analysis

---

[2] The Court does not offer its own opinion as to the consistency or supportability of Dr. Bailey's opinion that Plaintiff "avoid heavy lifting, pushing, pulling, [or] repetitive bending/squatting," but the Court notes that Dr. Bailey advised Plaintiff of these or similar limitations in March 2020 (R. 295, 301), May 2020 (R. 306), June 2020 (R. 317), March 2021 (R. 371), May 2021 (R. 365), October 2021 (R. 472), June 2022 (R. 443), and August 2022. (R. 512, 706).

in other areas of its decision. Rather, the Court notes only that it is not clear that the ALJ applied the applicable legal standard to Dr. Bailey's opinion regarding Plaintiff's ability to perform physical demands. Therefore, the Court cannot say that substantial evidence supports the ALJ's decision.[3] As such, remand is warranted.

## CONCLUSION

For the reasons, discussed herein, it is hereby **ORDERED** that Plaintiff's case be **REMANDED** to the Commissioner for a reevaluation of the evidence pursuant to 42 U.S.C. § 405(g).

**SO ORDERED**, this 1st day of August, 2025.

s/ Charles H. Weigle\
Charles H. Weigle\
United States Magistrate Judge

---

[3] As to Plaintiff's remaining arguments, the ALJ's findings are arguably supported by substantial evidence. However, it is difficult to reach that conclusion based on the lack of analysis of Dr. Bailey's opinion regarding Plaintiff's limitations under 20 C.F.R. § 404.1513(a)(2)(i). Therefore, at this time, it is not possible for the Court to consider whether the ALJ's other findings are supported by substantial evidence.